Argued and submitted October 12, 1992, reversed and remanded with instructions
June 23, 1993

# WILLIAM ARTHUR HAYNES,
*Appellant,*

*v.*

# STATE OF OREGON,
*Respondent.*

(16-90-02982; CA A67831)

854 P2d 949

George W. Kelly, Eugene, argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before De Muniz, Presiding Judge, and Edmonds and Leeson,* Judges.

LEESON, J.

---

* Leeson, J., *vice* Buttler, J., retired.

### LEESON, J.

Petitioner filed an amended petition for post-conviction relief in which he claims that his conviction is void, because his trial counsel's representation was constitutionally inadequate and therefore violated his right to counsel under the state and federal constitutions. ORS 138.530(1)(a). The court denied relief. We reverse and remand.

Petitioner's stepson had been released on parole from MacLaren School for Boys and was living in the community. *See* ORS 420.045(1). On July 27, 1988, a juvenile parole officer and a Eugene police officer went to petitioner's house to look for the stepson because the parole officer had reason to believe that the boy had violated the terms of his release from MacLaren and that he might be at petitioner's house.

Petitioner's wife voluntarily allowed the two officers to enter the house. The parole officer immediately began to search the house for the stepson. Petitioner's wife objected and told him to stay in the living room. Petitioner saw the parole officer and became agitated. He began arguing with him, asking him why, and on what authority, he was present. Words turned into blows and both men suffered physical injuries.

The state charged petitioner with assaulting a public safety officer. ORS 163.208(1) provides:

"A person commits the crime of assaulting a public safety officer if the person intentionally or knowingly causes physical injury to another person, knowing the other person to be a peace officer, corrections officer or firefighter, and while such other person is acting in the course of official duty."

The complaint alleged that defendant

"did unlawfully and knowingly cause physical injury to [victim], knowing him to be a corrections officer and while he was acting in the course of official duty[.]"

The jury convicted petitioner and the court imposed a mandatory seven-day jail sentence. ORS 163.208(2).[1]

---

[1] The complaint also accused petitioner of harassment. ORS 166.065. The jury acquitted him of that charge.

In petitioner's amended petition for post-conviction relief, he argues that a Children's Services Division juvenile parole officer is not a corrections officer within the meaning of ORS 163.208(1). He claims that his trial counsel's representation was constitutionally inadequate, because counsel failed to preserve clear and unmistakable error, and because he invited that error by requesting that the trial court instruct the jury that a

> " 'corrections officer' is a person employed by a federal, state or local correctional department or institution who is responsible for the care, custody, supervision or control of persons *subject to* confinement, parole or probation." (Emphasis supplied.)

Petitioner claims that an attorney providing adequate representation would have requested appropriate jury instructions and that, as a result of that failure, petitioner suffered prejudice. *See Trujillo v. Maass*, 312 Or 431, 436, 822 P2d 703 (1991).[2]

■     There is no easy formula for courts to apply in determining whether trial counsel's representation satisfies constitutional requirements. *Moen v. Peterson*, 312 Or 503, 509, 824 P2d 404 (1991). Nevertheless, the Supreme Court has said that representation is inadequate if counsel fails to "do those things reasonably necessary to diligently and conscientiously advance the defense." *Krummacher v. Gierloff*, 290 Or 867, 874, 627 P2d 458 (1981).

We agree that counsel should have raised the issue of whether a juvenile parole officer is a corrections officer within the meaning of ORS 163.208(1). The construction of the term "corrections officer" was fundamental to petitioner's defense, because if a juvenile parole officer is not a corrections officer, petitioner did not commit the crime with which he was charged. The parties have not cited, and we have not found, any appellate decision construing the term "corrections officer" for purposes of ORS 163.208(1).

■     At the post-conviction hearing, trial counsel testified that he was aware of the statutory construction issue, but

---

[2] On appeal, petitioner claims that trial counsel should have moved for acquittal after the state rested. However, petitioner did not raise that claim below and we do not consider it on appeal.

that he did not raise it, because he thought that the juvenile parole officer was employed by the "Corrections Division" and was, therefore, a "corrections officer." That analysis is superficial at best. Because the term had not been construed by the courts, a competent defense attorney at least would have raised the issue by way of jury instructions or some other means and preserved it for appellate review.[3] Trial counsel's failure to take those steps demonstrates "an absence or suspension of professional skill and judgment." *Krummacher v. Gierloff, supra,* 290 Or at 876.

■    To determine whether counsel's performance resulted in prejudice to petitioner, we must resolve the underlying legal issue in this case, which is whether a Children's Services Division juvenile parole officer is a "corrections officer" within the meaning of ORS 163.208(1). In interpreting statutes, our task is to determine the intent of the legislature. We look first to the text. ORS 174.020; *Porter v. Hill,* 314 Or 86, 91, 838 P2d 45 (1992).

■    ORS 163.208(1) defines "public safety officer" to mean a "peace officer, corrections officer, or firefighter." Although ORS 161.015(4) defines "peace officer" for purposes of ORS 163.208(1), the legislature did not define "corrections officer" or "firefighter." We construe a criminal statute "according to the fair import of its terms." ORS 161.025(2). Various statutes describe the functions of a corrections officer. The common characteristic of those statutes is the concept of confinement. ORS 181.610(2), for example, provides that a corrections officer is one who

> "primarily performs the duty of custody, control or supervision of individuals convicted of or arrested for a criminal offense and *confined in* a place of incarceration or detention other than a place used exclusively for incarceration or detention of juveniles." (Emphasis supplied.)

ORS 166.260(9) provides that the crime of unlawful possession of a firearm does not apply or affect a "corrections officer while transporting or accompanying an individual convicted of or arrested for an offense and *confined in* a place of

---

[3] Compare *Wells v. Peterson,* 315 Or 233, 844 P2d 192 (1992), in which the Supreme Court held that counsel's failure to raise a legal issue was not constitutionally inadequate when prior decisions of this court had discussed the legal issue "with varying results." 315 Or at 236.

incarceration or detention while outside the confines of the place of incarceration or detention." (Emphasis supplied.) ORS 421.296 provides that Oregon "inmates" who are members of a fire suppression unit shall be under the ultimate custody of Oregon "corrections officers." ORS 802.250(5) defines Oregon residents who work as corrections officers in another state to be persons who primarily performs the duty of "custody, control or supervision of individuals" in an "institution used for the *confinement* of persons convicted of a criminal offense." (Emphasis supplied.) We conclude that "corrections officer" means a person who primarily performs the duty of supervising or controlling an individual who is *confined* in a place of incarceration or detention.[4]

■   At petitioner's trial, the court, pursuant to defense counsel's request, instructed the jury that a corrections officer "is responsible for the care, custody, supervision, or control of persons *subject to* confinement, parole or probation," rather than persons who *are confined* in a place of detention or incarceration. (Emphasis supplied.) That was error. The evidence, taken in the light most favorable to the state, showed that petitioner's stepson was not *confined* in a place of detention; he had been lawfully *released* from a place of detention and was living in the community. A juvenile parole officer was investigating whether the boy had violated the terms and conditions of his parole. The state presented no evidence from which the jury could have found that the victim is a corrections officer within the meaning of ORS 163.208(1).[5]

■   As an independent ground for relief, petitioner claims that his counsel's representation was inadequate because he failed to introduce medical evidence of petitioner's neck injuries that he claims would have bolstered his claim of self-defense. Counsel and petitioner agreed that the issue at trial would not be the extent of the neck injuries, but rather

---

[4] This definition of "corrections officer" is consistent with the use of the term in cases decided before ORS 163.208(1) was enacted in 1981. *See, e.g., Sterling v. Cupp,* 290 Or 611, 613, 625 P2d 123 (1981); *Hammer v. OSP,* 283 Or 369, 371, 583 P2d 1136 (1978).

[5] On appeal, the parties argue about whether a juvenile parole officer is a "peace officer" within the meaning of ORS 163.208(1). That issue was not raised in the pleadings in the post-conviction court and was not argued below. We do not address it on appeal.

who struck first. Other evidence showed that petitioner had been struck in the neck. The decision to forego the evidence on that issue was within the range of choices that a competent defense counsel would make.

Reversed and remanded for entry of judgment for post-conviction relief.